**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| SHAWNA WESNESKI,<br><br>   Plaintiff,<br><br>   v.<br><br>AT&T MOBILITY SERVICES LLC,<br><br>   Defendant. | CASE NO.<br><br>**JURY TRIAL DEMANDED**<br><br>*ELECTRONICALLY FILED* |

## COMPLAINT

Plaintiff, SHAWNA WESNESKI, a resident of York County, Pennsylvania, by and through her attorneys, Weisberg Cummings, P.C., brings this civil action for damages against the above-named Defendant, AT&T MOBILITY SERVICES LLC, demands a trial by jury, and complains and alleges as follows:

### JURISDICTION AND VENUE

1.     This Complaint alleges unlawful disability discrimination within the workplace, as well as retaliation for engaging in the protected activity of reporting and discussing this discrimination, all in violation of the laws and statutes of the United States of America, specifically, Americans with Disabilities Act, 42 U.S.C. §12101 *et seq.* (the "ADA").

2.  Jurisdiction of the claims set forth in this Complaint is proper in this judicial district pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. §2000e *et seq.*, and 28 U.S.C. §§1331 and 1343.

3.  Venue is proper in the Middle District of Pennsylvania pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to these claims occurred in this Judicial District, and under 42 U.S.C. § 2000e-5(f)(3), in that among other things the unlawful discrimination practices that are the subject of this action were committed in this Judicial District.

4.  Declaratory relief is sought pursuant to 28 U.S.C. §§2201 and 2202.

### THE PARTIES

5.  Plaintiff, Shawna Wesneski ("Mrs. Wesniski" or "Plaintiff"), is a female adult individual who resides in York County, Pennsylvania.

6.  Mrs. Wesneski lives with Type 1 Diabetes ("T1D") which is an autoimmune disorder that requires a lifelong, daily commitment in order to manage its related symptoms.  As such, Mrs. Wesneski's T1D is a disability as defined by the ADA and the PHRA.

7.  Defendant, AT&T Mobility Services LLC ("AT&T Mobility" or "Defendant"), is a Delaware corporation with a headquarters and principle place of business located at 1025 Lenox Park Boulevard, Atlanta, DeKalb County, Georgia 30319.

2

8. At all times relevant and material hereto, Mrs. Wesneski was employed on a telecommuter worker basis for AT&T Mobility in Hanover, York County, Pennsylvania.

9. At all times relevant and material hereto, AT&T Mobility employed in excess of fifteen (15) people, making it an employer as defined by the ADA and Title VII.

## ADMINISTRATIVE PROCEEDINGS

10. Mrs. Wesneski initiated a Complaint with the Equal Employment Opportunity Commission ("EEOC"), which was later formalized and docketed as Charge No. 530-2026-01913 on April 16, 2026, with instruction to be cross-filed by the EEOC with the Pennsylvania Human Relations Commission ("PHRC") for purposes of being dual filed with the PHRC

11. Plaintiff has been advised of her right to sue in federal court by the EEOC, which notice was received on or about April 22, 2026.[1]

12. All necessary and appropriate administrative prerequisites to this action have occurred.

---

[1] Plaintiff's claims for disability discrimination and retaliation were "dual-filed" with the PHRC on or about April 16, 2026. As such, Plaintiff intends to amend her Complaint to include these state claims once they become ripe, one year from their PHRC filing date.

## STATEMENT OF FACTS

13.   Mrs. Wesneski initially began working for AT&T Mobility in or around 1994 and worked for eleven (11) years without issue before taking a break to raise her children.

14.   After taking this break for a few years, in or around October of 2022, Mrs. Wesneski returned to AT&T Mobility as a Customer Service Advocate, where she continued to work for a total of fourteen (14) years without issue.

15.   Throughout both of her tenures of employment, Mrs. Wesneski was a hard-working, dedicated employee for AT&T Mobility.

16.   Mrs. Wesneski is disabled under the ADA as a result of her T1D.

17.   Mrs. Wesneski's disability affects her body's autoimmune system, including her ability to regulate blood sugar, which if left unmanaged, can be fatal.

18.   As a result of her disability, Mrs. Wesneski required a reasonable workplace accommodation - the ability to take short breaks throughout her shift to manage her blood sugar as needed - an accommodation that AT&T Mobility approved.

19.   For several years, Mrs. Wesneski would make use of this approved reasonable accommodation to manage her blood sugar whenever her levels would begin to drop.

20. This approved accommodation in no way affected her ability to perform the essential functions of her job and, indeed, AT&T Mobility often permitted Mrs. Wesneski's similarly situated, non-disabled co-workers to likewise take short breaks during their shifts.

21. However, on or about July 8, 2025, AT&T Mobility's willingness to accommodate Mrs. Wesneski's disability abruptly ended.

22. On that day, Mrs. Wesneski was working a shift under the direction of her direct supervisor, Jason Lang.

23. During this shift, Mrs. Wesneski was on a phone call with a customer which had lasted several hours.

24. During this call, Mrs. Wesneski noticed that her blood sugar level began to drop.

25. Concerned for her safety, Mrs. Wesneski messaged Mr. Lang via Microsoft Teams to alert him that she had not yet taken a break, and requested that she be able to take one to address her T1D and related low blood sugar.

26. Mr. Lang refused to allow Mrs. Wesneski to take a break to treat her low blood sugar, despite him knowing that AT&T had previously approved this exact accommodation for her to manage her disability.

27. At this point, Mrs. Wesneski's blood sugar level continued to drop, becoming dangerously low.

28. Despite Mrs. Wesneski's ongoing pleas to address this emergency arising from her disability, Mr. Lang continued to deny Plaintiff the opportunity to take a break from the customer to manage her blood sugar.

29. Finally, after five and one-half (5½) hours, Plaintiff was able to take a break.

30. The next day, on or about July 9, 2025, Mrs. Wesneski filed a complaint of disability discrimination with AT&T Mobility's Human Resources Department ("HR") arising out of the July 8th incident, including Mr. Lang's conduct.

31. However, despite the severe and potentially fatal nature of the allegations contained in Mrs. Wesneski complaint to HR, coupled with her concern that such an incident may happen again, AT&T Mobility failed to respond until Mrs. Wesneski contacted HR again on or around September 17, 2025.

32. Because of the trauma that Mrs. Wesneski experienced from the July 8, 2025, incident, including AT&T Mobility's refusal to address the issue after her report to HR, Plaintiff began to experience severe panic attacks, unstable blood sugar, and other outward physical symptoms related to her disability.

33. Then, on or about September 16, 2025, a few months after Mrs. Wesneski's initial complaint to HR, several of her coworkers engaged in a discussion regarding her July 8, 2026, incident and subsequent report to HR.

34. The next day, on or around September 17, 2025, Mrs. Wesneski was called into a meeting with Mr. Lang and another supervisor, Danny Lozano.

35. During this meeting, Mr. Lang and Mr. Lozano informed Mrs. Wesneski that she should not be discussing workplace conditions, and threatened that she would be terminated if she continued to discuss the July 8, 2025, incident with her coworkers.

36. Immediately following this meeting and threat to her ongoing employment, Mrs. Wesneski again contacted HR to both report this incident, as well as to follow up on her initial complaint on July 9,2025.

37. In speaking with HR, Mrs. Wesneski learned that HR had *still* not yet taken any corrective action regarding her complaint.

38. Then, on or about October 22, 2025, HR e-mailed Mrs. Wesneski to inform her that the investigation into her complaint of disability discrimination had been closed.

39. Soon thereafter, on or about December 15, 2025, Mrs. Wesneski was terminated under the pretext of purported misconduct.

40. Accordingly, AT&T Mobility's denial of Mrs. Wesneski's reasonable accommodation on July 8, 2025, as well as its decision to threaten and then terminate her employment for making a good-faith report of this disability discrimination violated her federal rights pursuant to the ADA.

7

## COUNT I

### VIOLATIONS OF THE ADA
#### *Failure to Accommodate*

41. The averments in all prior paragraphs are incorporated by reference as though fully set forth herein.

42. Plaintiff is within the protective class of individuals as designated by the ADA.

43. Plaintiff is a qualified individual with a disability, because she has T1D.

44. Plaintiff's disability substantially limits her ability to work long shifts without a short break to manage her blood sugar levels when needed.

45. Plaintiff was able to perform the essential functions of her job with a reasonable accommodation; namely, taking a short break to manage her blood sugar level if it became too low during her shift.

46. For several years prior to July 8, 2025, Defendant afforded Plaintiff this reasonable accommodation by permitting her to take a short break during her shift as needed without any issue.

47. Then, abruptly, on or around July 8, 2025, Defendant denied Plaintiff her accommodation by refusing her request to take a short break to address her blood sugar when it became dangerously low.

48. Defendant violated the ADA by refusing to afford Plaintiff this reasonable accommodation.

49. The illegal conduct was based on whole or in part upon Plaintiff's disability.

50. As a direct and proximate result of the conduct of Defendant in violating the ADA by refusing Plaintiff a reasonable accommodation for her disability, Plaintiff has been permanently and irreparably harmed and damaged and has and will continue to lose benefits of employment such as lost earnings, lost employment benefits, and non-economic damages in the form of embarrassment, humiliation, and anxiety.

**WHEREFORE**, Plaintiff, Shawna Wesneski, seeks the damages against Defendant, AT&T Mobility, as set forth in the *Ad Damnum* clause of this instant Complaint, see infra, which total amount exceeds the jurisdictional limits for mandatory arbitration referral.

## COUNT II

### VIOLATION OF THE ADA
*Disparate Treatment*

51. The averments in all prior paragraphs are incorporated by reference as though fully set forth herein.

52. Plaintiff suffers from T1D, a disability as defined by the ADA.

53.    Defendant knew that Plaintiff suffered from T1D, and therefore knew she is disabled.

54.    During her shift on or around July 8, 2025, Plaintiff's disability caused her blood sugar to drop dangerously low.

55.    Recognizing this life-threatening danger as a result of her T1D, Plaintiff repeatedly requested and pleaded with Defendant for permission to take one of her previously-approved short breaks to manage her blood sugar.

56.    Despite full knowledge of the life-threatening nature of this incident, Defendant denied Plaintiff this request.

57.    Defendant, however, regularly permitted Plaintiff's similarly situated, non-disabled coworkers to take breaks, meals, or seek call relief for non-disability related reasons.

58.    This disparate treatment was based in whole or in part on Plaintiff's disability.

59.    As a result of this disparate treatment, Defendant violated Plaintiff's federal rights pursuant to the ADA.

60.    As a direct and proximate result of the conduct of Defendant in violating the ADA by discriminating against Plaintiff on the basis of her disability, Plaintiff has been permanently and irreparably harmed and damaged and has and will continue to lose benefits of employment such as lost earnings, lost

employment benefits, and non-economic damages in the form of embarrassment, humiliation, and anxiety.

**WHEREFORE**, Plaintiff, Shawna Wesneski, seeks the damages against Defendant, AT&T Mobility, as set forth in the *Ad Damnum* clause of this instant Complaint, see infra, which total amount exceeds the jurisdictional limits for mandatory arbitration referral.

## COUNT III

### VIOLATION OF THE ADA
### *Retaliation*

61.    The averments in all prior paragraphs are incorporated by reference as though fully set forth herein.

62.    As set forth above, Plaintiff engaged in protected activity, as defined by the ADA, both by filing a complaint of disability discrimination with Defendant's HR and by discussing a workplace incident related to her disability within the workplace.

63.    As a result of Plaintiff engaging in protected activity, Defendant retaliated against her by threatening to terminate her employment.

64.    Defendant further retaliated against Plaintiff by later terminating her employment.

65.    The actions of Defendant set forth above constitute violations of Plaintiff's federal rights pursuant to the ADA.

66.    As a direct and proximate result of the conduct of Defendant in violating the ADA by retaliating against Plaintiff for engaging in protected activity, Plaintiff has been permanently and irreparably harmed and damaged and has and will continue to lose benefits of employment such as lost earnings, lost employment benefits, and non-economic damages in the form of embarrassment, humiliation, and anxiety.

**WHEREFORE**, Plaintiff, Shawna Wesneski, seeks the damages against Defendant, AT&T Mobility, as set forth in the *Ad Damnum* clause of this instant Complaint, see infra, which total amount exceeds the jurisdictional limits for mandatory arbitration referral.

### *AD DAMNUM* CLAUSE/PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, Shawna Wesneski, prays that the Court enter judgment in her favor and against the Defendant, AT&T Mobility, and that it enter an Order as follows:

a.    Defendant is to be permanently enjoined from discriminating or retaliating against Plaintiff on the basis of her disability and/or any basis prohibited under applicable federal and state law;

b.    Defendant is to be prohibited from continuing to maintain its illegal policy, practice, or custom of discriminating or retaliating against employees based on their disabilities and is to be ordered to

12

promulgate an effective policy against such discrimination and retaliation and to adhere thereto;

c.    Defendant is to compensate Plaintiff, reimburse Plaintiff, and to make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for the Defendant's illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, medical and other benefits, training, promotions, pension and seniority. Plaintiff should be accorded those benefits illegally withheld from the date she first suffered discrimination and/or retaliation at the hands of the Defendant until the date of verdict;

d.    Plaintiff is to be awarded actual damages, as well as damages for the pain, suffering, and humiliation caused to her by Defendant's actions;

e.    Plaintiff is to be awarded punitive damages as available under the ADA based upon Defendant's willful violations of the ADA;

f.    Plaintiff is to be afforded any and all other equitable and legal relief as the Court deems just, proper, and appropriate;

g.    Plaintiff is to be awarded the costs and expenses of this action and reasonable legal fees as provided by applicable federal and state law;

13

h. Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages set forth in applicable federal law;

i. Plaintiff is to be granted such additional injunctive or other relief as she may request during the pendency of this action in an effort to ensure the Defendant does not engage – or ceases engaging – in illegal retaliation against the Plaintiff or other witnesses to this action; and

j. The Court is to maintain jurisdiction of this action after verdict to ensure compliance with its Orders therein.

## **DEMAND FOR JURY**

Pursuant to Federal Rule of Civil Procedure 38(b) and otherwise, Plaintiff respectfully demands a trial by jury.

Respectfully submitted,

**WEISBERG CUMMINGS, P.C.**

Dated:  July 15, 2026

*/s/ Derrek W. Cummings*
Derrek W. Cummings, Esquire
PA I.D. #: 83286
dcummings@weisbergcummings.com

*/s/ Larry A. Weisberg*
Larry A. Weisberg, Esquire
PA I.D. #: 83410
lweisberg@weisbergcummings.com

*/s/ Steve T. Mahan*
Steve T. Mahan, Esquire
PA I.D. #: 313550
smahan@weisbergcummings.com

*/s/ Michael J. Bradley*
Michael J. Bradley, Esquire
PA I.D. #: 329880
mbradley@weisbergcummings.com

2704 Commerce Drive, Suite B
Harrisburg, PA 17110-9380
(717) 238-5707
(717) 233-8133 (Fax)

*Counsel for Plaintiff*